Argued May 6, reversed and remanded June 4, 1958

# STATE OF OREGON v. LERMENY
## 326 P. 2d 768

*W. K. Carey* and *S. H. Burleigh,* La Grande, argued the cause for appellant. On the brief was Edward E. Grant.

*M. Keith Wilson,* District Attorney, Enterprise, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and ROSSMAN, LUSK and McALLISTER, Justices.

LUSK, J.

The defendant has appealed from a judgment of conviction of violation of the Oregon Liquor Control Act.

The indictment reads:

"Robert Lermeny is accused by the Grand Jury of the County of Wallowa by this Indictment of the crime of Selling alcoholic liquor without a license, committed as follows:

"The said Robert Lermeny on the 27 day of April, 1957, in the said County of Wallowa, and State of Oregon, then and there being, did then and there unlawfully and wilfully, sell, solicit, take orders for and peddle certain alcoholic liquor, to-wit, whiskey, without first having obtained a license from the Oregon State Liquor Control Commission so to do, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

The trial was before the court on the following stipulated facts:

"On April 27, 1957, the defendant, Robert Lermeny, was operating a taxi business in the City of Enterprise, Oregon. Lermeny was not licensed to sell intoxicating liquor but had a permit to purchase liquor. On that date, Charles Franklin Mal-

lon, who was a prisoner in the Wallowa County jail, but who was on leave from the jail with consent of the jailer, called Lermeny's number on the Enterprise telephone exchange, and asked for a taxi to be dispatched to the home of Mallon's sister in Enterprise. Lermeny's wife answered the call and arrived with the taxi. Mallon advised Mrs. Lermeny that he wished to see Lermeny, and she drove him to the Lermeny home.

"There Mallon asked Lermeny to purchase for him two pints of whiskey, and advised Lermeny that he, Mallon, had no permit to purchase liquor, and didn't want to purchase a permit. There is no evidence that defendant knew Mallon was under jail sentence, and defendant expressly denies knowing who Mallon was.

"Mallon gave defendant $20.00 in currency and defendant drove to the liquor store in Enterprise, went into the store and bought two pints of whiskey, delivered the whiskey to Mallon in the taxi, along with the change remaining from the $20.00, and redelivered Mallon to Mallon's sister's home in Enterprise. There is no evidence that the defendant made any profit on the liquor transaction and the defendant expressly denies receiving any compensation for making the purchase."

ORS 471.405 (3) provides:

"No person not licensed under the Liquor Control Act shall sell, solicit, take orders for or peddle alcoholic liquor."

The words "to sell" and "sale" are thus defined in ORS 471.025:

"(1) Whenever the words 'sell' or 'to sell' refer to anything forbidden under the Liquor Control Act and relate to alcoholic liquor, they include:

"(a) To solicit or receive an order.

"(b) To keep or expose for sale.

"(c) To deliver for value or in any way other than purely gratuitously.

"(d)  To peddle.

"(e)  To keep with intent to sell.

"(f)  To traffic in.

"(g)  For any consideration, promise or obtain, directly or indirectly, or under any pretext or by any means, to procure or allow to be procured for any other person.

"(2)  The word 'sale' includes every act of selling as defined in subsection (1) of this section."

The stipulation does not specify that "the liquor store in Enterprise" was an agency duly licensed by the Oregon Liquor Control Commission to sell intoxicating liquors (ORS 471.210), but we may assume this to be the fact.

█ The state contends that the defendant's act in purchasing whiskey on his own permit, at the request of Mallon and with Mallon's money and delivering it to him, constituted a sale of alcoholic liquor. It is said that the defendant received an order for alcoholic liquor from Mallon; that he delivered alcoholic liquor to him for value; and that he procured intoxicating liquor for another person "under the explicit representation that he was procuring it for himself." Upon the last mentioned point the state's brief says:

"Subsection 1g, 471.025 ORS qualifies two different classes of transactions as 'sale.' The first embodies those facts where for a consideration, a person promises to, or does obtain, either directly or indirectly alcoholic liquor. * * * The second classification qualifies those transactions as sales where a person by any pretext or by any means, promises to procure or allow to be procured for any other person, intoxicating liquor, and the element of consideration is not material. Defendant acting under the pretext that he was making a purchase of liquor for himself, promised to procure, and did procure intoxicating liquor for another

person and thereby sold intoxicating liquor in violation of our statutes."

We construe all the provisions of ORS 471.025 to contemplate only transactions in which an element of consideration is involved—in short, commercial transactions. As the reasons for this conclusion will sufficiently appear in discussing the state's interpretation of subsection (1) (g) of the statute, we will take up that contention first.

For the purpose of clarity we again quote that subsection:

"For any consideration, *promise or obtain*, directly or indirectly, or under any pretext or by any means, to procure or allow to be procured for any other person." (Italics added.)

We cannot agree with the state's interpretation. The subsection, as originally enacted in 1933, Oregon Laws 1933, Second Special Session, ch 17, § 3 (6) read: "for any consideration, promised or obtained, directly or indirectly, or under any pretext or by any means whatsoever, to procure or allow to be procured for any other person." The identical language was carried over into OCLA, § 24.103 (6) and repeated in Oregon Laws 1949, ch 445, § 1 (6) and Oregon Laws 1951, ch 570, § 1 (6). The section first appeared in its present form in Oregon Revised Statutes adopted in 1953.

Prior to the revision, the meaning of the subsection was clear. The words "for any consideration" are modified by the phrase "promised or obtained, directly or indirectly, or under any pretext or by any means whatsoever." The final phrase, "to procure or allow to be procured by any other person" is dependent upon all that has gone before. Thus, what the statute means is that one definition of a sale is to procure or allow

to be procured, alcoholic liquor for another person for a consideration, whether such consideration be promised or obtained, and whether it be promised or obtained directly or indirectly, or under any pretext or by any means whatsoever. The intention was not to denounce as unlawful the gratuitous procuring of liquor for another person, but only such procuring for a consideration, and care was taken to safeguard against resort to pretexts to cover up the fact that a consideration had actually been paid or promised.

If the provision, as it now appears in ORS, is attempted to be read literally and grammatically, it is practically meaningless. Due to the substitution of the verbs "promise or obtain" for the former participial adjectives "promised or obtained" (which have reference to a consideration) the section now says "promise or obtain * * * to procure or allow", etc. One might promise to procure or allow to be procured liquor for another, although we doubt that the legislature would ever have intentionally defined such a promise as a sale. But to "obtain * * * to procure or allow" is sheer nonsense. Obviously, it is necessary to resort to construction in order to ascertain the legislative intent.

■ We think it apparent from what has just been said and from other provisions of the statute defining "sell" that the changes in language were mere clerical errors or misprints, and that no change in meaning was intended. The idea of consideration or commercial transaction runs through the whole of ORS 471.025. The first definition in the statute is "To solicit or receive an order." "Order" is defined in Funk & Wagnalls New Standard Dictionary as "A commission or instruction to supply, negotiate for, purchase, or sell something." The word is used as a commercial term and imports a business transaction. See *State v. Brewer*,

114 Ark 149, 154, 169 SW 804. Other definitions are to "peddle" and to "traffic in." The meaning of the former is too well known to require resort to a dictionary. "Traffic" is defined in Funk & Wagnalls as "To make the subject of commercial exchange, as goods or wares; barter." The statutory definition "To deliver for value or in any way other than purely gratuitously" speaks for itself.

■ It is a case in which the court is authorized to correct clerical errors or misprints in order to make the statute read in such a manner as to conform to the real meaning of the legislature. The rule is thus stated in Black on Interpretation of Laws (2d ed) § 58:

> "Clerical errors or misprints, which, if uncorrected, would render the statute unmeaning or nonsensical, or would defeat or impair its intended operation, will not vitiate the act; they will be corrected by the court and the statute read as amended, provided the true reading is obvious and the real meaning of the legislature is apparent on the face of the whole enactment."

See, also, Endlich, Interpretation of Statutes, § 319.

■ Beyond this, there is a presumption that the revision has not changed the law, Oregon Laws 1949, ch 317, § 3; *State v. Davis,* 207 Or 525, 538, 296 P2d 240; and, in case of an ambiguity in a section of Oregon Revised Statutes, we are required to resort to the act from which the section is derived "for the purpose of resolving the ambiguity." ORS 174.530; *State v. Holland,* 202 Or 656, 659-664, 277 P2d 386.

We conclude, therefore, that Subsection (1) (g) of ORS 471.025 is to be read in the same manner as when it was originally enacted, and that this provision does not prohibit the procuring of alcoholic liquor for an-

other unless it is done for a consideration "promised or obtained."

Under the stipulated facts the defendant did nothing but render Mallon a gratuitous service. The transaction was not a sale within any of the statutory definitions of that word. The state argues that the consideration for the transaction consisted of the fare the defendant was paid for "his hauling of Mallon for this illegal purpose." The stipulation does not state that a fare was paid, but we may assume that it was. If so, we are also required to assume that it was the regular fare, neither more nor less than it would have been under circumstances not connected with the purchase of intoxicating liquor. We are unable to see by what process of reasoning it can be maintained that the consideration for the transportation became as well consideration for procuring the liquor.

The state relies on *State v. Gear*, 72 Or 501, 143 P 890. This was a prosecution for selling intoxicating liquor to a minor. The defendant was a waiter in a restaurant who, with money furnished him by a minor, a patron of the restaurant, bought some beer at a nearby saloon not connected with the restaurant and carried it back to the restaurant and delivered it to the minor. A conviction was sustained on the theory that the defendant aided and abetted in the sale of intoxicating liquor to a minor. The court said that "a sale of intoxicating liquor to a minor took place, and without the assistance rendered by the defendant to the seller the sale would not have been accomplished." The case is not in point. The charge here is that the defendant, who had no license for that purpose, sold intoxicating liquor to Mallon. If, following the reasoning of the Gear case, we should say that the defendant aided and abetted the duly licensed state agency in

selling intoxicating liquor to Mallon, who had no permit to purchase it, and that this was an unlawful act, still it is not the unlawful act charged in the indictment. The defendant did not aid or abet anyone in making a sale of intoxicating liquor without a license, nor did he, within the statutory definition of "sell" make such a sale himself. Even though the defendant were held to have been the agent of the liquor store, still there would be no evidence of a sale without a license, for under that assumption the principal in the transaction did have a license.

If the position of the prosecution were to be upheld, then every person in this state who purchases intoxicating liquor from a duly licensed state agency for a friend or relative with money furnished by the other is a law violator. We suspect that there have been many transactions of that kind since the enactment of the Oregon Liquor Control Law in 1933, but until this case we had not heard of anyone being prosecuted for such an act. We are not justified in imputing to the legislature a purpose to denounce such conduct as unlawful in the absence of clearer language creating the offense than can be found in the present statute.

The judgment is reversed and the cause remanded to the circuit court with directions to discharge the defendant.