Commonwealth *v.* Hill, et al., Appellants.

Argued November 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Allen N. Brunwasser*, for appellants.

*Louis R. Paulick*, Assistant District Attorney, with him *Robert L. Eberhardt*, Assistant District Attorney, *John M. Tighe*, First Assistant District Attorney, and *John J. Hickton*, District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P.J., October 28, 1975:

This is an appeal from the judgment of sentence, Criminal Division of the Court of Common Pleas of Allegheny County by the defendants-appellants, Izear Hill and Fred Hill, after conviction by a jury of possession of and trafficking in heroin and cocaine; and from the denial of post-trial motions.

On August 19, 1971, three detectives, armed with search warrants for the persons of each of the defendants, for the residence at 250 Sebring Avenue, Pittsburgh, Pennsylvania, and for a 1969 Oldsmobile which belonged to the defendant Izear Hill, rang the doorbell to the residence at 250 Sebring Avenue and received no answer although the lights were on inside the premises. The

officers then set up a surveillance of the premises two doors away. About one-half hour later, the defendants were seen leaving the residence and approaching the 1969 Oldsmobile which was parked in front of the residence. After observing the defendants, the detectives approached them, identified themselves as detectives, and informed the defendants of the search warrants. Izear Hill then tried to conceal a brown bag that he was carrying under some articles in the trunk of the vehicle. One of the officers grabbed Izear Hill and took the bag from him. In so doing a brown bottle, later found to contain quinine, a substance often used in cutting heroin, fell to the ground. Both defendants then began to struggle with the officers and during the course of the struggle another package, carried by defendant Fred Hill, fell to the ground. The bag carried by Izear Hill contained 45 "half-spoon" packets of heroin in glassine bags and 11 packets of cocaine in glassine bags. The brown paper bag carried by Fred Hill was found to contain 15 "half-spoon" packets of heroin in glassine bags.

Testimony at trial established that a "half-spoon" of heroin consists of about 5 grams of the substance and sells for $25.00 on the street. The subsequent search of the residence revealed seven measuring spoons containing a white powder and two brown boxes containing a large amount of glassine bags. The Oldsmobile contained no contraband. A total of $721.00 in currency was also found on the persons of the defendants.

The defendants raise eight issues in their brief alleging various errors by the trial court. Several of the eight allegations actually deal with only one issue, that being whether the evidence produced at trial was sufficient to convict the defendants of trafficking in proscribed substances in violation of the Act of September 26, 1961, P.L. 1664, Section 4(q), 35 P.S. §780-4 (q). The above Act prohibits "the possession, control, dealing in, dispensing, selling, delivery, distribution, prescription, traf-

ficking in, or giving of, any dangerous or narcotic drug." Both heroin and cocaine fall into this category. It is the appellants' position, however, that the Commonwealth failed to establish that the appellants trafficked in drugs because no evidence of any specific sale or attempted sale was introduced at the trial. In so arguing the appellants would have us interpret the word "trafficking" in the statute as being synonymous with the word "selling." Webster's International Dictionary, Third Edition, defines "traffic" as follows: "a. to engage in commercial activity. . . . b. to engage in illegal or disreputable business or activity." Thus, it is clear that the word "traffic" is much broader than the word "sale" and that a person could be engaged in the trafficking of a substance without being the one who actually sells a substance. We must note that the legislature in enacting the section chose to include both the words "trafficking" and "selling" in its enumeration of proscribed activities. Since we have established that the words are not synonymous it is logical to conclude that "trafficking" in drugs can be accomplished by a defendant even though he has never made a "sale." A statute must be construed to give effect to *all* of its language. *Whitemarsh Twp. Auth. v. Elwert,* 413 Pa. 329, 196 A. 2d 843 (1964). The legislature is also presumed not to have intended provisions in its laws as mere surplusage which would obviously be the case if the words "sale" or "trafficking" were held to be synonymous. See, *Daly v. Hemphill,* 411 Pa. 263, 191 A. 2d 835 (1963) and *Commonwealth v. Bostick,* 34 Leh. L.J. 539 (1972). In light of both logic and the rules of statutory construction it is therefore clear that "trafficking" and "selling" dangerous drugs are separate proscribed activities.

Turning to the facts of our case it is also clear that sufficient evidence was produced at trial so as to enable the jury to convict on the charge of "trafficking." Both defendants were found with substantial quantities of heroin on their persons. The heroin was packaged in

glassine bags and appellants were in the process of transferring the neatly packaged substances from the residence into the vehicle at the time of their arrest. The residence itself was found to contain a large quantity of glassine bags which are commonly used to package and sell narcotics. Several measuring spoons were also found on the premises. A quantity of quinine was found on the person of Izear Hill. Both defendants had large amounts of cash on their person.

While some of these facts standing alone would not be indicative of any type of criminal behavior we feel that, taken together, enough evidence was produced so as to enable a jury to infer that the defendants were indeed engaged in "trafficking" of the heroin and cocaine despite the absence of any evidence of a specific sale.

Defendants also attempt to argue that somehow our recent decisions involving joint possession affect this case. However, in light of the fact that large amounts of prohibited substances were found on the persons of *both* defendants it is clear that those decisions are not applicable here.

The other issues raised by the defendants do not merit discussion.

Judgment of sentence is affirmed.

————

DISSENTING OPINION BY HOFFMAN, J.:

Appellants contend that the lower court erred in submitting their case to the jury on a charge of selling narcotics, where there was no direct evidence of sale.

On August 19, 1971, plainclothes detectives Martine, Ciganek, and Joiner, armed with a search warrant, set up surveillance of the residence of Izear Hill at 250 Sebring Avenue in Pittsburgh. After waiting approximately a half hour, the detectives observed the appellants leave the house and approach the rear of a 1969 Oldsmobile parked in front of the house, which belonged to appellant

Izear Hill. The detectives then left their car, identified themselves, and informed the appellant that they had a search warrant. Detective Martine noticed that Izear Hill had a brown paper bag in his hand, and was trying to stuff the bag underneath articles which he had in the trunk. Detectives Martine and Joiner then grabbed Izear Hill and got the bag out of his hand. While they were doing so, a brown bottle fell to the street. The bottle was found to contain quinine, which is often used as a cutting agent for narcotics. The paper bag also contained 45 half-spoon size glassine bags, which were later analyzed as heroin, and 11 half-spoon bags wrapped in glassine bags, which were later found to contain cocaine. A search of Izear Hill yielded $289.00 in currency.

While Detectives Joiner and Ciganek were struggling with Fred Hill, a package fell to the street. The contents of the package were analyzed as 15 half-spoons of heroin wrapped in glassine bags. In addition, $432.00 in currency was taken from the person of Fred Hill. A search of the residence at 250 Sebring Avenue yielded seven measuring spoons containing a white powder and two brown boxes containing a large number of glassine bags. The search of the car yielded no contraband.

The appellants were indicted on December 17, 1971, on counts of possession of, and selling and dealing in heroin and cocaine. On June 13, 1972, a jury found them guilty on both counts. Post-trial motions were denied. Appellants were each sentenced to a term of one to five years of imprisonment, without reference to count.

The appellants' primary contention is that the lower court erred in submitting the charge of selling or dealing to the jury where there was no evidence connecting them with a specific sale or transaction. The Commonwealth argues that such proof is unnecessary, on the theory that the statute forbids "trafficking" in narcotics as well as sales, and that such trafficking may be inferred from the possession of sufficient quantities of narcotics. The Com-

monwealth cites no appellate case which interprets the statute in this manner.

The Commonwealth relies on the language of The Drug, Device and Cosmetic Act,[1] §4(q), former 35 P.S. §780-4(q), which prohibited "[t]he possession, control, dealing in, dispensing, selling, delivery, distribution, precription, *trafficking in,* or giving of, any dangerous or narcotic drug." (Emphasis supplied). This language was paralleled in the second count of the indictment, apparently a standard form, which charged that the appellants did "deal in, dispense, sell, deliver, distribute, prescribe, *traffic in,* and give away" heroin and cocaine. (Emphasis supplied). This broad language of §4(q) of the Act must, however, be read in light of §20 of the Act, 35 P.S. §780-20, which prescribes penalties for various offenses under the Act. Under §20(c), "[a]ny person who *possesses* any narcotic drugs in violation of the provisions of this act" is guilty of a felony, and subject to a five-year prison term for the first offense. (Emphasis supplied). Under §20(d), "[a]ny person who *sells, dispenses or gives away* any narcotic drugs in violation of the provisions of this act" is guilty of a felony, and subject to a term of up to twenty years' imprisonment for a first offense. (Emphasis supplied). Any other violation of the Act is classified as a misdemeanor by §20(a). It appears, therefore, that if this count is read as charging only one offense, as required by Rule 219(b), Pa. R.Crim.P., the word "trafficking" taken from §4(q) must be read as further defining the conduct proscribed by the words "sells, dispenses, or gives away" in §20(d). Indeed, the lower court specifically charged the jury as to the requirements of §20(d). Thus, the word "trafficking" found in §4(q) does not eliminate the requirement of proving selling, dispensing, or giving away as required by §20(d), just as the word "possession" found

---

1. Act of September 26, 1961, P.L. 1664.

in §4(a) does not eliminate the requirement of proving a sale in order to invoke the penalty of §20(d).

It is true that possession of a large quantity of drugs, at least under certain circumstances, is sufficient evidence to establish intent to sell under the new Controlled Substances Act,[2] 35 P.S. §780-113(a) (30). See *Commonwealth v. Santiago*, 462 Pa. 216, 340 A.2d 440 (1975). Nevertheless, proof of intent to sell is not proof of actual sale or dealing.

Although the evidence pointing towards an intent to sell would not be relevant to a charge of actual sale, it would be relevant in determining whether the appellants must be resentenced on the possession charge, under the new Controlled Substances Act. Section 39(a) of the Act provides that "[i]n any case not yet final if the offense is similar to one set out in this act, the penalties under this act apply if they are less than those under prior law." A case is not final until the availability of appeal is exhausted and the time for petition for certiorari has elasped. *Commonwealth v. Simpson*, 222 Pa. Superior Ct. 296, 294 A.2d 805 (1972). Therefore, the instant case is not yet final, and was not final as of the effective date of the Controlled Substances Act.[3] It is therefore necessary to determine whether the offense for which the appellants were convicted was similar to simple possession under the Controlled Substances Act[4]

---

2. Act of April 14, 1972, P.L. 233, No. 64, §1 et seq.

3. We noted in *Commonwealth v. Portalatin*, 223 Pa. Superior Ct. 33, 36, n.6, 297 A.2d 144, 146, n.6 (1972), that "[s]ome confusion exists as to the exact date on which certain sections of the new act, including most sections pertaining to offenses and penalties, became effective." The Act was amended shortly after its passage to indicate that the sections dealing with sentencing and resentencing, 35 P.S. §§780-113, -115, and -139, took effect immediately. Act of June 27, 1972, P.L. 499, No. 158, §1, 35 P.S. §780-144. The Act in its entirety took effect on June 14, 1972.

4. Section 13(a) (16), 35 P.S. §780-113(a) (16), which carries a maximum sentence of one year for a first offense. §13(c), 35 P.S. §780-113(c).

or to possession with intent to deliver.[5] Our Supreme Court has recently held that evidence of volume and value of the drugs possessed is relevant to determine whether the offense for which an appellant was convicted was similar to possession with intent to deliver. *Commonwealth v. Santiago,* supra.

As it appears that the appellants were improperly convicted on the second count, alleging selling or dealing, where no sale or deal was proved, I would grant an arrest of judgment as to this second count.[6] This would necessitate a remand for resentencing on the remaining count. See *Commonwealth v. Lockhart,* 223 Pa. Superior Ct. 60, 296 A.2d 883 (1972). Resentencing may also be necessary under *Commonwealth v. Santiago,* supra, if the lower court determines that the offense which the appellants committed is similar to simple possession under the Controlled Substances Act.

I would arrest the judgment against appellants on the second count of the indictment, and remand for resentencing consistent with *Commonwealth v. Lockhart,* supra, and *Commonwealth v. Santiago,* supra.

CERCONE, J., joins in this dissenting opinion.

---

DISSENTING OPINION BY SPAETH, J.:

I quite agree with the President Judge, that when the legislature prohibited ". . . selling, [and] trafficking in, any dangerous or narcotic drug," presumably it meant

---

5. Section 13(a) (30), 35 P.S. §780-113(a) (30), which carries a maximum sentence of fifteen years for a first offense, in the case of heroin. §13(f), 35 P.S. §780-113(f).

6. Although the only post-trial motions appearing in the record are motions for a new trial, it is clear from the lower court's opinion that the question of the sufficiency of the evidence on each count was presented to and decided by the court. Insufficiency of the evidence is a ground for an arrest of judgment, rather than for a new trial. See *Commonwealth v. Dale,* 232 Pa. Superior Ct. 213, 335 A.2d 454 (1975).

to refer to two different kinds of conduct. That conclusion, however, does not solve the problem put to us by the present case; for if the legislature intended to prohibit not only "selling" but also "trafficking," why did it not provide a penalty not only for "selling" but also for "trafficking"?

In fact, it did not, as Judge HOFFMAN points out. I therefore cannot join the President Judge in his conclusion that "[i]n light of both logic and the rules of statutory construction it is therefore clear that 'trafficking' and 'selling' dangerous drugs are separate proscribed activities." (Opinion at 575). That they are "separate activities" may be clear;[1] but only one is "proscribed"; for "proscribed" cannot mean, "You must not do this act"; it must mean, "If you do this act, you will be subject to this punishment." If the legislature omits the punishment clause, the courts cannot supply it.

Granted our obligation to make clear what is unclear, we must not pretend to powers we do not have. The statute here defies clarification. I hope the legislature will amend it.

---

1. *But see Mollendorf v. State*, 67 Idaho 151, 173 P.2d 519 (1946), *People v. Gwyer*, 7 App. Div. 2d 711, 179 N.Y.S. 2d 987 (1st Dept. 1958), and *State v. Lermeny*, 213 Ore. 574, 326 P.2d 768 (1958), which treat "trafficking" as one of the definitions of "selling."