## Champ v. Butler County

*Frank P. Krizner*, for plaintiffs.
*William C. Robinson*, for defendant.

DILLON, *J.*, April 23, 1981—On March 28, 1979 a complaint in trespass was filed against the County of Butler alleging that Bethany Lynn Champ, a minor, was injured while playing on a horizontal ladder at Almeda Park, a public recreational facility owned and maintained by defendant.

The complaint avers that on June 3, 1977 the child was attending a picnic known as the Karns City Teachers picnic. At approximately 9:00 p.m., she attempted to dismount from the apparatus, but slipped instead and suffered ". . . severe contusions and abrasions to the upper chest and neck . . . , a severed windpipe, damage to her upper lungs, and the loss of use of her vocal cords causing loss of speech." These injuries were the result of defendant's failure to properly maintain the apparatus, failure to warn that the equipment was unsafe when wet, and failure to provide supervision and instruction in the use of such apparatus.

Defendant filed an answer and new matter asserting the affirmative defense of non-liability

under the provisions of the Recreation Use of Land and Water Act of February 2, 1966, P.L. (1965) 1860, 68 P.S. § 477-1 et seq. (hereinafter referred to as the Recreation Use Act). Plaintiffs filed preliminary objections in the nature of a motion to strike and a demurrer asserting that the statutory defense was inapplicable to the circumstances in this case.

After a careful analysis of the authorities set forth by the parties and the two cases decided under the Recreation Use Act, it is the court's conclusion that the statute does not affirmatively bar plaintiffs' cause of action. Therefore, the preliminary objections to defendant's new matter must be sustained.

Initially, it is noted that the statutory immunity asserted by the county is neither governmental nor sovereign in nature.[1] The availability of the limited statutory immunity provided by the Recreation Use Act must be derived solely from the provisions of the statute. Further reference to governmental and/or sovereign immunity shall serve solely as an aid in statutory interpretation and application.

Although the Recreation Use Act and its statutory predecessor, the Act of September 27, 1961, P.L. 1696, sec. 1, 12 P.S. § 1629, repealed by the Act of February 2, 1966, P.L. (1965) 1860, sec. 8, have

1. Governmental immunity was abrogated by the Supreme Court in Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 305 A. 2d 877 (1973). In Mayle v. Pennsylvania Department of Highways, 479 Pa. 384, 388 A. 2d 709 (1978) the doctrine of sovereign immunity was abolished. Subsequently, the General Assembly revived governmental immunity: Political Subdivision Tort Claims Act of November 26, 1978, P.L. 1399, 53 P.S. § 5311.101 et seq.; repealed by Act No. 1980-142, 42 Pa.C.S.A. § 8541 et seq. Sovereign immunity was reaffirmed generally subject to specific statutory waiver by the General Assembly: 1 Pa.C.S.A. § 2310; 42 Pa.C.S.A. § 8521 et seq.

existed for a period of time in excess of 19 years, this court is unaware of any case law where either statute cloaked a municipality with immunity from suit. However, one set of circumstances which occurred in Bald Eagle State Park in Centre County, Pennsylvania, resulted in two separate actions.

In Hahn v. Commonwealth of Pennsylvania, 18 D. & C. 3d 260, 15 Centre 63 (1980), the late President Judge Sharp held that the Commonwealth of Pennsylvania could not avail itself of the limited protection of the Recreation Use Act. Judge Sharp's analysis focused primarily upon the question whether the Commonwealth is "owner" within the meaning of the statute. In reaching the conclusion that the Commonwealth was not an "owner" of land, the court stated at pp. 264:

"The Pennsylvania Act contains no . . . reference to private landowners . . . ."

"However, the Commonwealth's conclusion that it possesses the status of an 'owner of land' under the Recreation Use of Land and Water Act does not necessarily flow from the failure of the statute to limit itself to 'private owners of land.' The Recreation Use of Land and Water Act was passed in 1966. At that time, it was not open to serious question that the Commonwealth possessed sovereign immunity. It seems safe to assume that the legislature, when limiting the liability of landowners, believed the State immune from suit. Consequently, one must seriously question whether the legislature intended to confer upon the Commonwealth a redundant immunity. It is axiomatic that the Courts, when construing statutory language, must presume that the legislature did not intend an absurd result or intend to perform a useless act when enacting the statute. See 1 Pa.C.S.A. § 1922. In sum the legisla-

ture is presumed not to have intended provisions in its laws as mere surplusage. Commonwealth v. Hill, 236 Pa. Super. 572, 346 A. 2d 314 (1975)."

While the state court action was pending, plaintiff, Hahn, filed suit against the United States pursuant to the Federal Tort Claims Act of June 25, 1948, 62 Stat. 933, 28 U.S.C.A. §§ 1346(b), 2671 et seq.; Hahn v. United States, 493 F.Supp. 57, 60 (M.D. Pa. 1980). In the action in the Federal court, the court granted a summary judgment for defendant. In doing so, the court distinguished the position of the United States from that of the Commonwealth as follows:

"Unlike the Commonwealth of Pennsylvania, the United States had waived its sovereign immunity to some extent at the time of the Recreation Use of Land and Water Act was passed. 28 U.S.C. §2674 provided then, as it does now, that the United States is liable with respect to tort claims in the same manner and to the same extent as a private individual would be under like circumstances. Clearly, the provisions of the Recreation Use of Land and Water Act are available to a private individual. It is the Court's view that it thus must be available to the United States."

These cases are different from the case at bar to the extent that the interaction is between the Recreation Use Act and governmental rather than sovereign immunity. However, it would seem appropriate to adopt a similar line of reasoning and conclude that the Recreation Use Act is not available to the county.

An additional reason for dismissing defendant's new matter is apparent. It appears that The County Code of August 9, 1955, P.L. 323, as amended, 16 P.S. §§2501-2503, has created a duty to keep parks

and playgrounds safe.[2] Where the county commissioners exercise their authority to set aside land or buildings not otherwise devoted to public use for recreation places, section 2502 of The County Code states clearly ". . . [a]ll such recreation places *shall* be kept in good order and repair." (Emphasis supplied.) This statutory duty is consistent with the decision of the Supreme Court of Pennsylvania in Paraska v. Scranton, 313 Pa. 227, 169 Atl. 434 (1933), wherein the court held that such a duty did exist. In Paraska, the court stated at p. 229:

"With all due respect to jurisdictions in which the role of nonliability is enforced, we believe that the opposite principle is more consonant with justice, as we are unwilling to establish a rule of law in this State which will put children in playgrounds at the mercy of dangerous conditions of which they are not aware and over which they have no control. Where a city undertakes to manage and supervise property, such as public parks and playgrounds, it must take care to keep that property in a reasonably safe condition for those invited to come upon it, and this is particularly true in the case of children in playgrounds."

The conflict between the statutory duty imposed by The County Code and the limited immunity provided by the Recreation Use Act is evident. If the Recreation Use Act is available to protect a county from suit except where the facts fit within 68 P.S. §477-6, then the duty imposed by The County Code has been severely circumscribed. In effect, the interaction of The County Code and the Recreation Use Act would permit a recovery only to a person

2. For similar provisions see Act of July 8, 1919, P.L. 784, as amended, 53 P.S. §§24191-24192.

who is a gratuitous licensee. See Hahn v. Commonwealth, supra. This would effectively eliminate the duty imposed by The County Code. Since the law is not clear on this question and because it is just as reasonable to limit the application of the Recreation Use Act, it seems appropriate to consider the intention of the General Assembly.

The Statutory Construction Act of 1972 imposes certain constraints upon the courts of the Commonwealth of Pennsylvania in the matter of ascertaining legislative intent: 1 Pa.C.S.A. §§ 1501, 1921 et seq. The principal rule of construction and interpretation is to ". . . ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." Id., § 1921(a). If the words ". . . are clear and free from *all* ambiguity, . . . [the words and their meanings are] not to be disregarded under the pretext of pursuing [their]spirit." (Emphasis supplied.) Id., § 1921(b). If the words do not lend themselves to a clear interpretation and/or application, then the court may consider any of the following in ascertaining legislative intent:

"(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute." Id., § 1921(c).

Finally, contrary to a common misapprehension

of both practitioners and courts, the test is not limited to the meaning of the words, but whether they ". . . are clear and free from *all* ambiguity. . . ." (Emphasis supplied.) Id., § 1921(b).

After examination of the legislative intent, this court determined that "recreational purpose" as defined in section 477-2(3) of the Recreation Use Act is not coextensive with "recreation places" as that term is used in section 2501 et seq. of The County Code.

Section 2501(a) of The County Code states:

"The county commissioners may in any county designate and set apart for use as public parks, parkways, bridle paths, foot paths, playgrounds, playfields, gymnasiums, public baths, swimming pools, agricultural fairgrounds, or *other indoor or outdoor recreation centers, all of which shall hereinafter be referred to as recreation places,* any lands or buildings owned by such county and not dedicated or devoted to other public use." (Emphasis supplied.)

The purpose of The County Code provisions was to provide "recreation centers" for the public. These "recreation centers" are in the nature of facilities provided by the county within its discretion. Once this discretion is exercised, a duty attaches. This duty is one to keep the facilities in "good order and repair." The County Code, supra, §§2501-2502.

On the other hand, section 477-1 of the Recreation Use Act provides: "The purpose of this act is to encourage owners of land to make *land and water areas* available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." (Emphasis supplied.) Section 477-2(3) further defines "recrea-

tional purpose" as follows: "As used in this act: . . . (3) 'Recreational purpose' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports, and viewing or enjoying historical, archeological, scenic, or scientific sites." Clearly, the intention of the General Assembly in the enactment of the Recreation Use Act was to foster the increased availability of vast quantities of natural resources for the benefit of the general public with a minimum of expense to the public and limited liability for the owner. While the predecessor statute limited its applicability to hunting and fishing on agricultural lands or woodlands, the Recreation Use Act encompassed a broader range of activities. The Recreation Use Act never speaks in terms of facilities. The Recreation Use Act was an attempt to make vast amounts of private land available for the use of the public at little or no expense and without fear of liability with two exceptions. Although some of the recreation which is available at a recreational place under The County Code is similar to recreation defined as "recreational purposes" under the Recreation Use Act, the focal point is whether the site of the activity is a facility under The County Code or raw land under the Recreation Use Act. Since it is the former, then the duty attaches and the Recreation Use Act does not bar liability.

The exclusive consideration that the Recreation Use Act gives to the Commonwealth or other governmental unit is limited to sections 477-5 and 477-6 which provide:

"§477-5 Land leased to State or subdivision    Unless otherwise agreed in writing, the

provisions of sections 3 and 4 of this act shall be deemed applicable to the duties and liability of an owner of land to the State, or any subdivision thereof for recreational purposes."

"§477-6 Liability not limited    Nothing in this act limits in any way liability which otherwise exists: (1) For wilful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity. (2) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section."

The language of these two sections appear to relate to private land owners rather than governmental. Neither section can be read as broadly as the defendant might wish.

## ORDER

And now, April 23, 1981, the preliminary objections of plaintiffs to defendant's answer and new matter are sustained. The claim of statutory immunity under the Recreation Use of Land and Water [Act] is dismissed.