440 A.2d 591

**COMMONWEALTH of Pennsylvania**

v.

**Melvin STOKES, Appellant.**

Superior Court of Pennsylvania.

Submitted June 29, 1979.

Filed Jan. 19, 1982.

Richard J. Conn, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

SUGERMAN, Judge:

Appellant was found guilty in the Municipal Court of Philadelphia County, of possession of a controlled substance, possession of a controlled substance with the intent to deliver it, and several weapons offenses. On appeal to the Court of Common Pleas of Philadelphia County, Appellant on September 7, 1976, was again found guilty at a bench trial of the crimes involving controlled substances,[1] but post trial, Appellant's motion in arrest of judgment was granted as to the conviction of possession with the intent to deliver.

On the same day, Appellant was sentenced upon the conviction of simple possession to a term of imprisonment of not less than three nor more than twelve months. Appellant took no direct appeal, but on December 15, 1976 filed a pro se petition pursuant to the Post Conviction Hearing Act ("PCHA").[2] New counsel was appointed for Appellant and filed an amended PCHA petition. Both such petitions assert the ineffectiveness of Appellant's trial counsel in several respects. More specifically, Appellant asserted in the PCHA petitions that (1) his privately retained counsel failed to appear to assist in Appellant's defense at trial in the Municipal Court but rather dispatched an associate to represent Appellant who was unprepared and failed to produce certain items of physical evidence at the trial which were in counsel's possession; (2) his counsel at trial in the Court of Common Pleas failed to produce the same physical evidence which would have "materially aided" Appellant in his defense; (3) his counsel at trial in the Court of Common Pleas failed to cross examine the arresting officers upon an assert-

* Pres. Judge John Q. Stranahan, of the Court of Common Pleas of Mercer County, Pennsylvania, is sitting by designation.

Judge Leonard Sugerman, of the Court of Common Pleas of Chester County, Pennsylvania, is sitting by designation.

1. Prior to trial in the Court of Common Pleas, the criminal informations charging Appellant with the weapons offenses were quashed.

2. Act of January 25, 1966, P.L. (1965) 1580, §§ 1, et seq., 19 P.S. § 1180–1, et seq. (Supp.1965–1980).

ed inconsistency between their testimony at trial in the Municipal Court and in the Court of Common Pleas; (4) his trial counsel failed to interview a witness who "may have been able to present exculpatory evidence"; and (5) counsel, contrary to Appellant's expressed desire, failed to file a direct appeal following Appellant's conviction in the Court of Common Pleas. Two evidentiary hearings were held upon the petitions and thereafter the hearing judge, by opinion and order, denied Appellant relief.

On appeal, Appellant raises five issues, again contending that his trial counsel was ineffective (1) in failing to file a direct appeal following Appellant's conviction; (2) in failing to produce or introduce at trial exculpatory physical evidence in counsel's possession; (3) in failing to produce an exculpatory witness, or asking for a continuance in order to produce such witness; and (4) in failing to properly cross-examine the arresting officers upon allegedly inconsistent testimony. In addition, Appellant asserts that his counsel was ineffective for not permitting Appellant to testify in his own defense at trial in the Court of Common Pleas.

■ As is apparent from our earlier recitation of the essential allegations contained in the two PCHA petitions, and our review of the petitions themselves, Appellant never alleged that trial counsel was ineffective for failing to call Appellant as a witness in his defense. Nor does the record of the PCHA evidentiary hearings reveal a single word of testimony or argument on the subject. Neither we nor our trial courts may consider issues not presented in properly filed PCHA petitions, *Commonwealth v. Zillgitt*, 489 Pa. 189, 413 A.2d 1078 (1980), and as the court below, we do not consider the issue.

■ It will also be recalled that Appellant asserted that his counsel was ineffective in failing to cross-examine the arresting officers upon alleged inconsistencies in their testimony as given at trial in the Municipal Court on the one hand, and at trial in the Court of Common Pleas on the other. Although this allegation appears in both PCHA

petitions, Appellant offered no testimony, other evidence or argument concerning the matter at the PCHA hearings. The burden of establishing the grounds for PCHA relief is upon the petitioner, *Commonwealth v. Jackson*, 494 Pa. 457, 431 A.2d 944, 945 (1981) *quoting Commonwealth v. Logan*, 468 Pa. 424, 433, 364 A.2d 266, 271 (1976), and the failure to present testimony or other evidence on the issue at an evidentiary hearing constitutes an abandonment of such grounds as a basis for relief. *Commonwealth v. Roman*, 494 Pa. 440, 431 A.2d 936, 937 (1981). Again, we do not consider the issue.

Appellant has preserved the three remaining issues and we shall examine them in turn.

## (1)

Appellant contends that immediately following his conviction, he asked his trial counsel to file a direct appeal, and counsel agreed to do so. Nevertheless, Appellant continues, trial counsel failed to file an appeal. At the PCHA hearings, Appellant testified that it was essential that an appeal be filed as the conviction constituted a violation of federal parole which, if parole were revoked, would and apparently did subject Appellant to further incarceration in a federal institution.

At the evidentiary hearings, trial counsel, in response to questions on the subject by Appellant's PCHA counsel, summarized his contrary recollection of the event:

"Q[BY PCHA COUNSEL]

And sir, did you or Mr. Stokes discuss taking an appeal from Judge Jenkins' ruling?

[BY APPELLANT'S TRIAL COUNSEL]

A Well, I must explain to you what occurred in Judge Jenkins' courtroom on that day. The matter was tried before Judge Jenkins on a waiver of a jury trial. A police officer testified, he was cross-examined. Thereafter Judge Jenkins adjudicated the defendant guilty of

two counts of possession with intent to deliver and manufacture a controlled substance, to wit, heroin and also possession.

Q Was that methamphetamine?

A Yes, Schedule II, I'm sorry. Thereafter I orally argued before the Court a Motion for new trial and arrest of judgment. The Court granted a Motion on [sic] arrest of judgment as to the count concerning the possession with intent to deliver and as to the count concerning possession the Court denied our Motion either for a new trial or arrest of judgment. The Judge then sentenced Mr. Stokes to a period of incarceration of three months to twenty-three months and he was given credit for time served. Thereafter his appellate rights were given to him and thereafter I had a discussion with Mr. Stokes at the side of the courtroom. At the time we had discussed what avenue we should pursue and I informed him that the result seemed to be unlikely under the circumstances and that his matter with the Federal Parole Board, as he told me, could probably be resolved if, and only if, the matter was a guilty of possession only. We accomplished that result and thereafter—he seemed to be pleased—and thereafter we did nothing further.

Q Sir, I believe it's a matter of record that Mr. Stokes received a sentence of six to twenty-three months before you argued the post-trial Motions before Judge Jenkins.

A And it was reduced from six to twenty-three to three to twelve after the arrest of judgment was granted. Whatever the Record indicates—*I know in my judgment after speaking with Mr. Stokes he seemed to be exceptionally pleased with the result because he said he could handle the matter before the Federal Parole Board without any difficulty whatsoever.*" (N.T. 6–8, 5/24/78) (emphasis added.)

Addressing the issue of credibility, the hearing judge said in his Opinion:

"We find the testimony of the defendant to be not credible or worthy of belief. On the contrary, we find the testimony of Mr. Tinari [trial counsel] to be extremely credible. We are convinced and find as a fact that the defendant knowingly and voluntarily waived his appellate rights after he was advised of those rights by Judge Jenkins on the record. We, therefore, conclude as a matter of law that such a waiver was valid." Opinion of the lower court at 5.

In our approach to the issue before us, we are reminded that when reviewing the PCHA court's determination, our task is not to engage in a *de novo* evaluation of the testimony presented. As we said in *Commonwealth v. Stanton*, 294 Pa.Super. 516, 440 A.2d 585 (1981):

"Rather, we look to whether the Appellant's PCHA court's determination is supported by evidence of record and is otherwise free of legal error. *Commonwealth v. Lutz*, [492] Pa. [500], 424 A.2d 1302 (1981).

And in *Commonwealth v. Edwards*, [273] Pa.Super. [351], [356–7] 417 A.2d 685, 687 (1979), we quoted from *Commonwealth v. Lee*, 478 Pa. 70, 75, 385 A.2d 1317, 1320 (1978) (which in turn quoted *Commonwealth v. Sullivan*, 472 Pa. 129, 145, 371 A.2d 468, 476 (1977)):

'The findings of the PCHA court, which hears the evidence and passes on the credibility of the witnesses, should be given great deference. See *Commonwealth v. Smith*, 454 Pa. 256, 312 A.2d 396 (1973); *Commonwealth v. Minnick*, 432 Pa. 462, 247 A.2d 569 (1968). Consequently, this Court will not disturb its findings if they are supported in the PCHA record. See *Commonwealth v. Hauser*, 450 Pa. 388, 299 A.2d 218 (1973); *Commonwealth v. Tabb*, 433 Pa. 204, 249 A.2d 546 (1968); *Commonwealth v. Minnick*, supra. This is true even when the record could support a contrary holding . . . [citation omitted].' "

It is beyond cavil that a defendant has an absolute right to appeal, *Pa.Const.* art. V, sec. 9, and the ultimate decision of whether to do so must be made by the defendant and not counsel. *Commonwealth v. Hertzog*, 492 Pa. 630–32,

425 A.2d 329–33 (1981) (collects cases); *Commonwealth v. Wilkinson*, 490 Pa. 296, 299, 416 A.2d 477, 479 (1980).[3] At the same time, it is well settled that a defendant may waive the right to appeal, provided such waiver is a "knowing and intelligent" act on the part of a defendant.[4] *Commonwealth v. Mika*, 277 Pa.Super. 339, 419 A.2d 1172, 1173 (1980).

The record before us clearly supports the finding of the lower court that Appellant, with a full understanding of his right to appeal, deliberately waived that right. The trial judge, following his announcement of the verdict, fully informed Appellant of his right to appeal. Appellant does not contend that he failed to comprehend such right. Appellant's trial counsel, as we have observed, testified that he also discussed Appellant's appellate rights with Appellant, and that in light of the court's arresting judgment on the conviction for possession with the intent to deliver a controlled substance, Appellant seemed "exceptionally pleased with the result". Counsel also recalled discussing with Appellant the impact of the remaining conviction upon Appellant's federal parole. Counsel recalled that he was advised by Appellant that he "could handle the matter before the Federal Parole Board without any difficulty whatsoever". Finally, counsel could recall no request on the part of Appellant to file an appeal. It is again observed that the hearing judge fully credited counsel's testimony and the record supports such finding. We discern no reason to disturb that finding on appeal.[5]

3. The American Bar Association Standards Relating to the Administration of Criminal Justice (Criminal Appeals) provide:
 "[C]ounsel has the professional duty to give to the client fully and forcefully an opinion concerning the case and its probable outcome. Counsel's role, however, is to advise. The decision is made by the client." Std. 21–3.2 Commentary (2d ed. 1978).

4. A "knowing and intelligent" waiver has been defined as "an intentional relinquishment or abandonment of a known right or privilege". *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1968); *Commonwealth v. Mallon*, 279 Pa.Super. 350, 358 n. 11, 421 A.2d 234, 238 n.11.

5. Although Appellant, in his amended PCHA petition asserts that his trial counsel was ineffective in failing to file a direct appeal, it is

538

*(2)*

Appellant next contends that his trial counsel was ineffective in failing to introduce at trial three pieces of physical evidence previously furnished to counsel by Appellant.

 Our review of this issue is of course controlled by *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967), and in accordance with the standard set forth therein, our inquiry ceases and counsel is deemed to have been effective once the court is able to conclude that counsel's actions had a reasonable basis designed to effectuate his client's interests. *Commonwealth v. Butler*, 495 Pa. 82, 86, 432 A.2d 590, 592 (1981).

The facts underlying Appellant's contention are easily summarized. Following a search of the premises pursuant to a warrant, Appellant was apprehended by police in a second floor apartment at 2402 North 29th Street in Philadelphia, and charged with the instant crimes involving a controlled substance. During the search of a bedroom in the apartment, the police came upon a closet secured by a large lock. At the request of the officers, Appellant withdrew a key from his person and unlocked the closet. A search of the closet revealed the presence of a metal container in which the police found plastic packets containing a substance later determined to be methamphetamines, and a "medical card", addressed to Appellant. The police also confiscated the sum of $890.00 in currency from Appellant's person. Prior to leaving the premises in police custody, Appellant not then fully dressed, put on shoes, socks and a jacket obtained from the bedroom.

apparent that Appellant is actually contending that as counsel did not follow Appellant's instructions to file an appeal, Appellant cannot be found to have waived his right to appeal. The right to collateral relief under the PCHA is precluded where the complaint sought to be raised by a petitioner has been waived. Section 3(d) of the PCHA, 19 P.S. § 1180–3(d) (Supp.1965–1980). Thus, if there has been an effective waiver, the review process is terminated. *Commonwealth v. Jumper*, 494 Pa. 451, 453, 431 A.2d 941, 942 (1981). So it is at bar.

■ As the controlled substance was not found upon Appellant's person, it was of course incumbent upon the Commonwealth to prove constructive possession on the part of Appellant. *Commonwealth v. Gill*, 490 Pa. 1, 415 A.2d 2 (1980); *Commonwealth v. Hoetzel*, 284 Pa.Super. 623, 426 A.2d 669 (1981). Apparently addressing that issue during a pre-trial conference with trial counsel, Appellant testified at the evidentiary hearings that he told counsel he did not reside at the apartment in which he was apprehended but was merely a visitor. When questioned by counsel concerning the source of the $890.00 found by the police upon Appellant's person, he testified that he told counsel that approximately half that sum had been withdrawn from his bank account by his mother, the said sum having been received earlier by Appellant as a grant-in-aid for his education.

Appellant also testified that he advised counsel that he could produce a rental receipt book to substantiate his address, and a bank passbook to verify the cash withdrawal, along with a receipt from a governmental agency attesting to the grant. Appellant ultimately gave these documents to counsel prior to trial. At trial, Appellant's counsel rested at the conclusion of the Commonwealth's case, offering no testimony or other evidence in Appellant's defense. The proposed physical exhibits were not introduced or referred to at trial.

■ Trial counsel testified at the PCHA evidentiary hearings that the bank passbook and the receipt for the grant in aid were in his view irrelevant in light of the ultimate disposition of the charge of possession with the intent to deliver. Counsel also testified that in the course of an interview, Appellant told him that he indeed resided at the premises where he was arrested, and that the rental receipt book confirmed that statement. Counsel further testified that he was aware that shortly after Appellant's arrest, Appellant had advised a bail agency that he resided at those premises. Accordingly, counsel testified, the use of the rental receipt book at trial would have seriously damaged

the defense. The lower court credited counsel's version of the events and the record supports such findings.

It is obvious that the use of the rental receipt book by the defense at trial, connecting Appellant as it did to the premises where the controlled substances were found, would have been an absurd act. The issue is patently without arguable merit. *Commonwealth v. Butler*, supra; *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

■ Although the use at trial of the bank passbook and grant receipt might well have assisted in dispelling any inferences arising from the discovery of $890.00 in cash upon Appellant's person,[6] we agree with counsel and the lower court that this prospective evidence was relevant, if at all, to the charge of possession with intent to deliver alone. As judgment was arrested upon Appellant's conviction of that charge, we find the issue moot and certainly not a basis upon which to grant relief.[7]

## (3)

■ Appellant lastly contends that trial counsel was ineffective for failing to secure the presence of a witness, one Judy Hoyle, or to request a continuance in order to gain the time necessary to obtain the presence of the witness.

At the time of Appellant's arrest, Ms. Hoyle was also in the apartment. At the evidentiary hearings, Appellant's only reference to the nature of Ms. Hoyle's proposed testimony or assistance in the defense was this, in its entirety:

"Q. [BY THE ASSISTANT DISTRICT ATTORNEY] Do you think Ms. Hoyle would have helped your case in any way?

**6.** *See, Commonwealth v. Hill*, 236 Pa.Super. 572, 346 A.2d 314 (1975); *Commonwealth v. Walley*, 225 Pa.Super. 465, 310 A.2d 381 (1973).

**7.** It must also be pointed out that the Commonwealth's case with respect to Appellant's alleged constructive possession of the controlled substance was overwhelming without regard to the cash found upon Appellant's person.

A. [BY APPELLANT] I believe so." (N.T. 40, 5/3/78.)

As we said in *Commonwealth v. Charleston*, 251 Pa.Super. 311, 316–7, 380 A.2d 795, 797 (1977) and reiterated in *Commonwealth v. Rhodes*, 272 Pa.Super. 546, 554–5, 416 A.2d 1031, 1035 (1979), the failure to call a possible witness will not be equated with a conclusion of ineffectiveness absent some *positive demonstration* that the testimony would have been helpful to the defense. Appellant's single reference to Ms. Hoyle's prospective assistance is hardly a "positive demonstration" that her testimony would have been helpful to Appellant's defense, and we will not find counsel to have been ineffective for the failure to produce her.

Of similar significance, however, is the simple fact that Ms. Hoyle could not be found. The record reveals that at some point during preparation for trial, Appellant gave his trial counsel Ms. Hoyle's name and "approximate" address. At the evidentiary hearings, Appellant, in response to questions by the Assistant District Attorney, tells it best:

"Q. Isn't it true that you were out on the street from March to July 22, 1976?

A. Yes.

Q. Did you speak to Miss Hoyle between March and July of '76?

A. No, I didn't.

Q. You didn't speak to her at all?

A. We couldn't find her.

Q. Who is we?

A. Me and Mr. Tinari's [Trial Counsel] office.

Q. So Mr. Tinari tried to locate Miss Hoyle?

A. Right.

Q. He couldn't find Miss Hoyle?

A. Right.

Q. You tried to locate Miss Hoyle—

A. Right.

Q. —but you couldn't find Miss Hoyle; is that true?

A. The answer to that question is she didn't live at the address that I knew at the time.

Q. So you couldn't find her at all?

A. Right." (N.T. 40–41, 5/3/78.)

Trial counsel testified to his fruitless efforts to find Ms. Hoyle, as well.

■ It is correct to note, as does Appellant, that the absence of a witness may well form a basis for a continuance, and counsel's failure to seek such relief may in a given case constitute ineffectiveness. *Commonwealth v. Stiefel*, 286 Pa.Super. 259, 428 A.2d 981 (1981). At bar, however, not only is the nature of Ms. Hoyle's proposed testimony unknown, but there is not the slightest indication in the record that she would or could ever be found. Under such circumstances, a court could quite properly refuse to grant a continuance. *Commonwealth v. Plath*, 267 Pa.Super. 1, 405 A.2d 1273 (1979). *And see Commonwealth v. Franks*, 271 Pa.Super. 278, 413 A.2d 404 (1979); *Commonwealth v. Mallon*, 279 Pa.Super. 350, 421 A.2d 234 (1980).

In sum, there is no indication in the case before us that a more intensive search on the part of counsel would have produced Ms. Hoyle, or that the additional time a continuance might have gained would have in any respect been useful. A finding of ineffectiveness can never be made unless it can be concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized. *Com. ex rel. Washington v. Maroney*, supra. In light of the record before us, we simply cannot reach such a conclusion here and we must reject Appellant's contention that the failure to produce Ms. Hoyle or request a continuance constituted ineffective assistance of counsel. *Cf. Commonwealth v. Bandy*, 494 Pa. 244, 431 A.2d 240 (1981).

Affirmed.