In re Philip L. KRYSL and Katherine A. Wilson (Krysl), Debtors.

Lee R. Shelton, Plaintiff,

v.

Philip L. Krysl and Katherine A. Wilson (Krysl), Defendants.

Bankruptcy No. 602–63514–AER7.
Adversary No. 02–6244–AER.

United States Bankruptcy Court, D. Oregon.

Jan. 16, 2004.

---

Lee R. Shelton, Eugene, OR, Plaintiff, Pro Se.

John L. Henderson, Eugene, OR, for Defendants.

## AMENDED MEMORANDUM OPINION [1]

ALBERT E. RADCLIFFE, Chief Judge.

Plaintiff has commenced this adversary proceeding against the defendants, debtors herein, seeking a determination that a debt allegedly owing by Defendants to a third party (from whom Plaintiff has acquired the debt) is excepted from Defendants' discharge herein, or, in the alternative, that Defendants be denied a discharge in this bankruptcy proceeding.

Defendants have moved to dismiss this case for lack of standing. Defendants maintain that Plaintiff is unlawfully conducting the business of a collection agency as defined by Oregon law. They assert that he has not registered as required by Oregon law, thus, he is barred from proceeding herein. Defendants further seek an injunction, as provided under Oregon law. They also seek to be awarded their reasonable attorney's fees and costs pursuant to Oregon law and 11 U.S.C. § 523(d).

An evidentiary hearing was held concerning the motion to dismiss on April 16, 2003. Thereafter, the parties were given an opportunity to submit post-hearing briefs; the matter is now ripe for decision.

### FACTS

Based upon the submissions and the evidence received, the court makes the following findings of fact:

ATEZ, Inc (ATEZ) is an asbestos removal company. At times, Plaintiff has solicited, and thereafter purchased, ATEZ's claims against third parties. In the last three years, ATEZ sold three (3) claims to Plaintiff. In the last ten (10) years, ATEZ sold approximately six (6) claims to Plaintiff.[2]

The sales are normally evidenced by written assignments. If a collection suit is filed, Plaintiff usually files as "assignee" of ATEZ. In one such case in 2000, the defendant therein paid ATEZ directly, thereafter Plaintiff dismissed the case and considered the debt satisfied.

There is no written agreement between Plaintiff and ATEZ regarding "factoring" services. Further, Plaintiff has never provided financial backing to ATEZ. Plaintiff has not registered as a collection agency with the State of Oregon.

On or about March 18, 2002, Plaintiff purchased, from ATEZ, all of its right title and interest in a $636.87 claim against Debtor, Katherine Wilson, as evidenced by a written assignment.

Defendants have incurred attorney's fees and costs in defending against Plaintiff's complaint.[3]

### DISCUSSION

 Oregon law requires the registration of collection agencies with the Department of Consumer and Business Affairs. ORS 697.015. Unregistered agencies are subject to an injunction, 697.087(1) and the party seeking the in-

---

1. This Amended Memorandum Opinion supercedes the Memorandum Opinion entered November 25, 2003.

2. In 2002, Plaintiff acquired four (4) or five (5) claims from parties other than ATEZ.

3. The amount of fees and costs will be determined at a subsequent hearing.

junction may be awarded its reasonable attorney's fees and costs. ORS 697.087(3). The term "collection agency" is defined in ORS 697.005(1)(a).[4]

Plaintiff has conceded that he has not registered and that he would ordinarily fit within the statutory definition of "collection agency." He argues, however, that he is excluded from the registration requirement by a statutory exclusion as one providing "factoring services." The exclusion, found in ORS 697.005(1)(b)(L)(ii), provides:

"Collection agency" does not include:

(L) Any person while the person is providing factoring services. A person is providing factoring services for the purposes of this subparagraph if the person engages, directly or indirectly, in the business or pursuit of:

(i) . . .

(ii) Soliciting or collecting on accounts that have been purchased from commercial clients under an agreement whether or not the agreement:

(I) Allows recourse against the commercial client;

(II) Requires the commercial client to provide any form of guarantee of payment of the purchased account; or

(III) Requires the commercial client to establish or maintain a reserve account in any form.

The statute thus requires that the person be engaged in the business of "soliciting or collecting on accounts that have been purchased from commercial clients under an agreement...." *Id.* (Emphasis added). Defendants argue there was no such agreement. Plaintiff contends that the written assignment of ATEZ's claim against Defendants to him is sufficient to meet the "agreement" requirement.

The statute does not define the term "under an agreement." This court did not discover any Oregon case-law construing it. It appears that this is a matter of first impression.

The Oregon courts have provided guidance as to the construction of Oregon statutes:

[W]e must first examine the text and context of a statute because the wording of a statute is the best evidence of the legislature's intent. The context of a statute relevant at the first level of analysis may include other provisions of the same statute and related statutes, prior enactments and prior judicial interpretations of that statute and related statutes, and historical context of the relevant enactments. Only if the intent of the legislature is not clear from the first level of analysis may legislative history be considered. If the legislative history fails to yield an unambiguous result, then consideration may be given to pertinent maxims of construction.

*State v. Waechter,* 163 Or.App. 282, 290, 986 P.2d 1281, 1286 (1999) (internal citations and quotations omitted). Further, the court must try to give effect to all provisions of the statute. ORS 174.010.[5]

In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; *and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.* (emphasis added).

---

**4.** The statute defines "collection agency" in pertinent part as:

Any person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed, due or asserted to be owed or due to another person or to a public body.

**5.** ORS 174.010 provides:

Turning to the first level of analysis, the statute's text requires purchase of accounts from a "commercial client." "Client" is defined as "any person *authorizing or employing* a collection agency to collect a claim." ORS 697.005(4) (emphasis added). Thus the "purchase" referenced in the statute, already implies a consensual transaction. To avoid rendering the "under an agreement" language surplusage, it must require something more than a single agreement to purchase a single account. That is, the statute must contemplate some form of "umbrella" or ongoing agreement between the "factor" and its client.

■ This interpretation is supported by the statute's context, which includes prior enactments. *Waechter, supra.* "Collection agencies" have long been regulated in Oregon, either by licensure or registration. In 1959, "individuals or firms who purchase or take accounts receivable for collateral purposes" were excluded from the definition of "collection agency business." ORS 697.020(4) (1959) (amended 1975) (repealed 1977). In 1963, the legislature added to the definition of "collection agency business", "any person ... who solicits or accepts accounts for collection on a contingent or percentage basis or by a fee or outright purchase for collection purposes

.…" ORS 697.020(3) (1963) (repealed 1977). It kept the above-referenced exclusion.

In 1975, "factoring agencies" (as well as "billing agencies") became regulated in the same statutory scheme. "Factoring agencies" were those that engaged in "factoring", which consisted of lending money to commercial clients, taking accounts receivable as security, and collecting upon those accounts.[6] Also in 1975, the exclusion for those purchasing or taking accounts receivable for collateral purposes, was replaced by an exclusion for persons "who purchase accounts without recourse." This exclusion made no mention of the purchase being "under an agreement" or otherwise. ORS 697.020(4) (1975) (repealed 1977). It applied to "factoring services", (as well as "collection agency business" and "billing services"). *Id.*

In 1977, the legislature added to the definition of "factoring or factoring service", (and thus to the regulatory scheme), parties who solicited or collected on commercial accounts purchased *under an agreement* with recourse.[7] It also continued the exclusion for any person who purchased without recourse, and added to that exclusion, persons who purchased with re-

---

6. "Factoring or factoring service" was defined as:

[E]ngaging, directly or indirectly and as a primary or secondary object, in the business or pursuit of lending or advancing money on the security of merchandise or accounts receivable to commercial clients and then enforcing collection procedures on these accounts. Any agency, firm, person, corporation or voluntary association lending or advancing money to commercial clients on the security of merchandise or accounts receivable who then enforces collection actions on these accounts receivable is conducting a factoring agency business....

ORS 697.020(11) (1975) (repealed 1977).

7. The statute read as follows:

"Factoring or factoring service" means engaging, directly or indirectly, in the business or pursuit of:

...

Soliciting or collecting on accounts that have been purchased from commercial clients under an agreement which allows recourse against such commercial client, or where such commercial client provides any form of guarantee of payment for such purchased account, or requires the commercial client to establish or maintain a reserve account in any form.

ORS 697.021(10)(b) (1977) (repealed 1981).

course, if the underlying account was commercial.[8]

In 1981, the legislature removed "factoring services" (as well as "billing services") from regulation. It replaced the prior exclusion for "purchasers of accounts" etc., with essentially the current exclusion for those providing "factoring services", labeling such as an "exemption."[9]

In 1995, the above exemption was renumbered, with nonmaterial changes, to the current ORS 697.005(1)(b)(L)(ii), providing for an "exclusion" as opposed to an "exemption."

This history supports the construction that the current "under an agreement" language connotes an agreement that is more than an agreement evidencing the purchase of any given individual account. Prior to 1981, certain purchasers of accounts (*no matter if under "an agreement"*) were excluded from the regulatory scheme. In 1981, the legislature supplanted the then-existing exclusion with the current one for "factoring services", which requires purchases "under an agreement."

■ In addition, for purposes of statutory construction, "context" also requires consideration of the preexisting common law. *Reed v. Jackson County Citizens League*, 183 Or.App. 89, 94, 50 P.3d 1287, 1290 (2002). As noted above, "factoring" first became part of the statutory scheme in 1975. The term "under an agreement" first appeared in 1977.

Prior to the introduction of "factoring" to the statutory scheme, the term "factor" as understood in the common law had evolved from its traditional usage as a type of agent who sells another's goods for commission, to its "modern" usage as one who supplies financing by buying accounts receivable at a discount. As explained in Am.Jur.2d:

> While in the past the terms "factor" and "commission merchant" were used interchangeably, "factoring" in modern commercial practice is understood to re-

---

8. The exclusion provided in pertinent part:
 > [T]he terms ... "factoring service" ... do not include:
 > The activity of any person in soliciting or collecting directly from the obligor any account or account receivable purchased from the owner thereof, provided such purchase is:
 > (A) Without recourse of any kind against such owner, requires no guarantee by such owner of the payment by the obligor of such account or account receivable, and requires no reserve account be established or maintained by such owner; or
 > (B) With recourse or requires a guarantee of payment or requires a reserve and the account or account receivable arose out of other than a consumer transaction.
 ORS 697.025(8) (1977) (repealed 1981).

9. The exemption, ORS 697.025(9)(b)(1981) (repealed 1995, and renumbered with grammatical changes, as ORS 697.005(1)(b)(L)), read in pertinent part:
 > The following are exempt from the requirement under ORS 697.015 to register

under ORS 697.031 before engaging in a collection agency business:
> (9) A person while the person is providing factoring services. A person is providing factoring services for the purposes of this subparagraph if the person engages, directly or indirectly, in the business or pursuit of:
> (a) ...
> (b) Soliciting or collecting on accounts which have been purchased from commercial clients under an agreement whether or not the agreement:
> (A) Allows recourse against the commercial client;
> (B) Requires the commercial client to provide any form of guarantee of payment of the purchased account; or
> (C) Requires the commercial client to establish or maintain a reserve account in any form.

The 1981 legislature also lessened the regulation of "collection agencies" to require "registration" instead of licensure. ORS 697.015 (1981).

fer to the purchase of accounts receivable from a business by a "factor" who thereby assumes the risk of loss in return for some agreed discount. Indeed, the factor has emerged primarily as a financier, often a finance company or similar institution, which provides its clients (usually manufacturers or other suppliers of goods) with needed working capital and other financial assistance by purchasing their accounts receivable.

32 Am.Jur.2d Factors and Commission Merchants § 2 (2003) (citing among others, *Manhattan Factoring Corp. v. Orsburn*, 238 Ark. 947, 385 S.W.2d 785 (1965)); *see also, Mountain Top Manufacturing Co. v. Business Factors Corp.*, 39 Misc.2d 408, 240 N.Y.S.2d 616 (1963).

Although no Oregon court expressly discussed this "modern" usage before the subject legislation, it was impliedly recognized in *Frutiger v. Department of Revenue*, 270 Or. 821, 824, 529 P.2d 910, 911 (1974). There, a corporation entered into a "financing agreement" whereby it was assigned another business' accounts receivable in consideration of advances of 85% of the face amount of the accounts. *Id.* The court characterized the corporation as being "engaged in the factoring business." *Id.* This "modern" usage was later expressly recognized by the court in *Zidell Marine Corp. v. West Painting, Inc.*, 133 Or.App. 726, 751 (f.n. # 9), 894 P.2d 481, 495 (1995) (dissent) ("[f]actoring' is a commonly used short-term financing arrangement whereby the debtor assigns acceptable accounts receivable to the creditor at a discount").

It is clear from the text of ORS 697.005(1)(b)(L)(ii)'s predecessor legislation, as reviewed above, that the terms "factoring" and "factoring service" (as originally enacted) contemplated the so-called "modern" usage of the term, which in turn supports the court's interpretation that some overall financing agreement needs to be in place.

■ Finally, this court should not construe a statute in such a manner to reach a result which is patently absurd. If Plaintiff's interpretation prevails, (and all that is required is an agreement to sell or assign an individual account), then the exclusion, in essence, consumes the whole. Any "collection agency" could qualify for the statutory exclusion for providing "factoring services". This also supports the court's conclusion that some ongoing agreement to purchase accounts and/or provide financing is required by ORS .697.005(1)(b)(1)(ii).

■ Here, Plaintiff admits that he had no underlying financing agreement or any other agreement for the purchase of ATEZ's accounts. Accordingly, the court concludes that Plaintiff satisfies the definition of a collection agency but does not qualify for the exclusion for the providing of "factoring services". Accordingly, Defendants' Motion to Dismiss should be granted; further, because they have incurred attorney's fees and costs in defending against Plaintiff's complaint, Defendants have been "injured" as the term is used in ORS 697.087(1) and thus Defendants are entitled to an injunction under that statute, as well as their reasonable attorney's fees and costs incurred herein.[10]

---

**10.** ORS 697.087(1) provides:

Any person injured as a result of the violation of any provision of ORS 697.015 or 697.058 or any rule adopted under ORS 697.031 or 697.085 may bring an action in an appropriate court to enjoin the practice or to recover actual damages or $200, whichever is greater. The court or the jury may award punitive damages and the court may provide such equitable relief as it deems necessary or proper

An appropriate order shall be entered, herein, enjoining Plaintiff from any further activities as a collection agent in this district until such time as he complies with the registration requirements pursuant to Oregon law. Further proceedings shall be held on Defendants' Motion for Sanctions, and to determine their reasonable attorney's fees and costs. All other pending matters in this adversary proceeding are rendered moot in light of this opinion.[11]

The above constitutes the court's findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated.

## AMENDED ORDER AND INJUNCTION

This matter came before the court on Plaintiff's Motion to Amend Findings, Order and Injunction. The court having entered its Letter Opinion, Amended Memorandum Opinion and therefore being fully advised in the premises;

**IT IS HEREBY ORDERED AND ADJUDGED** that the Order and Injunction entered November 25, 2003 be amended as follows:

**IT IS FURTHER ORDERED AND ADJUDGED** that pursuant to ORS 697.087(1), Plaintiff is hereby enjoined from operating as a "collection agency" (within the meaning of ORS 697.005(1)), a copy of which is attached hereto, and incorporated herein, in the State of Oregon unless and until he registers with the Oregon Department of Consumer and Business Services under ORS 697.031 and maintains the registration in accordance with that section; and

**IT IS FURTHER ORDERED AND ADJUDGED** that except as otherwise

amended above, the Order and Injunction entered November 25, 2003 shall remain in full force and effect; and

**IT IS FURTHER ORDERED AND ADJUDGED** that except as modified above and for the supplemental findings included in this court's Amended Memorandum Opinion entered on January 16, 2004, Plaintiff's Motion to Amend Findings, Order and Injunction shall be and it hereby is denied.

---

11. The office of the U.S. Trustee shall be given an opportunity to intervene regarding the claims based on 11 U.S.C. § 727.